J-S46016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  A.M.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  Y.T. | No. 239 MDA 2014 |

Appeal from the Decree December 30, 2013
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 83150

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 12, 2014**

Y.T. (Mother) appeals from the final decree involuntarily terminating her parental rights to her daughter, A.M.G. (born 3/2006).  Counsel has also filed an application to withdraw from representing Mother and has filed an "advocate's brief" to support the appeal.  After careful review, we deny counsel's application to withdraw and reverse.

On May 17, 2012, Berks County Children and Youth Services (BCCYS) took emergency custody of A.M.G. after receiving reports that Mother's mental health was significantly deteriorating and that A.M.G. had been truant from school for one month.  By agreement of all parties, A.M.G. was placed in kinship care.  On June 22, 2012, A.M.G. was adjudicated dependent and legal custody was awarded to BCCYS.  In order to have A.M.G. returned to her care, Mother was ordered to undergo parenting education, an alcohol and drug evaluation, random urinalysis, a mental health evaluation, casework sessions, a domestic violence evaluation, an

anger management evaluation, and establish and maintain stable and appropriate housing and income.

Since A.M.G.'s placement, Mother has had no source of income and has had seven listed addresses. On November 13, 2012, Mother's visits with A.M.G. were suspended via court order until she cooperated with recommended mental health therapy and documented her medication. Permanency review hearings in April and September of 2013 revealed that Mother's compliance with the permanency plan was determined to be "minimal" and she had made no progress toward alleviating the circumstances which necessitated A.M.G.'s original placement.[1]

On May 28, 2013, BCCYS petitioned to terminate Mother's parental rights based upon sections 2511(a)(1), (a)(2),[2] (a)(5), (a)(8) of the Adoption Act,[3] listing the following reasons for seeking termination: Mother

---

[1] Mother was incarcerated for six months from December 2012 to June 2013. Mother reportedly was "wandering around" Brooklyn and residing in various homeless shelters from July 2013 to October 2013.

[2] Pursuant to 23 Pa.C.S. § 2511(a)(2):

> (a) General rule. --The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

[3] 23 Pa.C.S. §§2101-2938.

has failed to remediate her substance abuse; concerns remain regarding Mother's mental health; concerns remain regarding issues of domestic violence; and Mother has a history of criminal activity[4] and repeated incarceration. BCCYS's Petition for Involuntary Termination of Parental Rights, 5/28/2013, at 2. On December 20, 2013, the Orphans' Court held a termination hearing; although Mother testified at the hearing, BCCYS relied solely upon 62 exhibits to support its petition to terminate. *See* N.T. Termination Hearing, 12/20/2013, at 4. At the time of the termination hearing, Mother was homeless and living in a drop-in shelter; A.M.G. was thriving in kinship care with paternal aunt and paternal grandmother. *Id.* at 8. Mother acknowledged to the Orphans' Court judge at the end of the hearing that she is "frustrated . . . upset . . . [and] depressed," but is unable to seek treatment for her mental health issues due to her inability to afford health insurance. *Id.* at 6. On December 31, 2013, the court entered a final decree terminating Mother's parental rights to A.M.G. This timely appeal followed.

On appeal, Mother raises the following issues:

(1) Did the lower court err by terminating Appellant's parental rights because Petitioners/Appellees did not establish by clear and convincing evidence that Appellant's parental rights should be terminated?

---

[4] Mother was sentenced to time-served to 23 months' incarceration, with a two-year probationary tail after pleading guilty to two counts of terroristic threats after threatening a neighbor with a kitchen knife and telling her she was "going to stab [her] like this." Affidavit of Probable Cause, 12/10/2012; Guilty Plea, 5/28/2013.

(2)  Did the lower court err by terminating Appellant's parental rights because the evidence presented by the Petitioners/Appellees was insufficient to support the lower court's decision?

Counsel's Petition to Withdraw

Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition the court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal. *In re:  Adoption of V.G.*, 751 A.2d 1174, 1176 n.4 (Pa. Super. 2000), citing *In Re:  Adoption of V.E.*, 611 A.2d 1267 (Pa. Super. 1992).  Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, appointed counsel seeking to withdraw representation must submit an advocate's brief. *In Re:  Adoption of V.E.*, 611 A.2d at 1275.

Here, counsel has complied with the dictates of *V.E.*  First, counsel has submitted an advocate's brief to this Court to support Mother's appeal. Counsel has also submitted an application/petition alleging that she has made a conscientious examination of the record, which included reviewing the record of the termination proceedings before the Orphans' Court, and

determined that an appeal would be frivolous.[5]  Counsel has advised Mother

of her appellate rights, her right to retain new counsel or proceed *pro se*,

and sent her a copy of her advocate's brief which refers to all possible

arguments she believes could be made on her behalf to support an appeal.

***See*** Counsel's Letter to Mother, 5/1/2014, at 1.

Having determined that counsel has satisfied the above requirements,

we may now conduct our own review of the proceedings and render an

independent judgment as to whether the appeal is devoid of any issues of

arguable merit warranting her withdrawal.

Termination of Mother's Parental Rights

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

***In re adoption of S.M.***, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation

omitted); ***see also In re Adoption of Atencio***, 650 A.2d 1064, 1066 (Pa.

1994) (clear and convincing evidence is defined as "testimony that is so

---

[5] Although she states that the issues in her brief are "frivolous," the proper standard, as annunciated in ***V.E.***, is that the issues have "no arguable merit." ***V.E.***, 611 A.2d at 1275.

'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'").

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order or decree is supported by competent evidence. *Id.*

Termination under 23 Pa.C.S. § 2511(a)

Mother claims that BCCYS did not establish, by clear and convincing evidence, that termination of her parental rights was proper under section 2511(a). We disagree.

Instantly, Mother's mental health has significantly deteriorated since A.M.G. has been in placement. Doctor Larry A. Rotenberg, a licensed psychologist, submitted a psychiatric evaluation of Mother noting that she is an "angry, sullen, agitated young woman [who has] paranoid ideas." Doctor Rotenberg diagnosed Mother as having bipolar disorder, with psychotic features, requiring psychiatric stabilization at a mental hospital. A BCCYS caseworker testified that at her visit with A.M.G. on November 6, 2012, Mother indicated she had dressed as the Biblical David for Halloween and had slayed Goliath and tied a red band around A.M.G.'s wrist, stating it was "the blood of Christ" and would protect her. Mother's behavior at this visit,

her last one to date, was inappropriate, bizarre and made A.M.G. feel uncomfortable. At her last visit with A.M.G., Mother ignored redirection from the visitation supervisor, told A.M.G. that she missed bathing and sleeping with her, and asked A.M.G. whether she still used a bottle and needed diapers.

In short, Mother has failed to comply with BCCYS's reunification objectives, which included participation in, and completion of, mental health treatment and taking her psychotropic medication. Mother is unable to understand the importance of attending to her mental health needs and the urgency of continuing to take her medications. Significantly, she does not comprehend the negative effect that her present mental health state has had on A.M.G. Mother is emotionally unstable, continues to fail to acknowledge and treat her mental health issues, and due to Mother's mental health problems, A.M.G. is without essential parental care which is necessary for her physical and mental well-being. Thus, termination was proper under 23 Pa.C.S. § 2511(a)(2).

Termination under 23 Pa.C.S. § 2511(b)

Instantly, the trial court makes no mention of whether a bond exits between Mother and A.M.G. and what effect termination of any bond would have on the developmental, emotional and physical needs and welfare of her daughter. These are required elements of a section 2511(b) analysis.[6] As

---

[6] The extent of the trial court's reference to the needs and welfare of A.M.G., in the context of terminating Mother's parental rights, is as follows:

we have noted, "the court **must** engage in a bifurcated process prior to terminating parental rights." *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (emphasis added). One major aspect of the needs and welfare analysis under section 2511(b) concerns *the nature and status of the emotional bond between parent and child, with close attention paid to the*

> We further find that termination of Mother's parental rights will best serve the needs and welfare of A.M.G. While in Mother's care, A.M.G. had not been taken to her medical appointments and was likely behind on her immunizations. At one point, the child had a urinary tract infection and Mother did not fill the prescription for treatment of this condition. The child's dental hygiene was poor. Once in placement, A.M.G. had frequent nightmares and tantrums. Her behavior was very difficult after she returned from visits with Mother. Some of her behaviors were inappropriate. A.M.G was given outpatient counseling and transferred to Kidspeace Partial (School) Day Program to give her more structure and support. She was diagnosed with, (*inter alia*), Post Traumatic Stress Disorder.
>
> A.M.G. has enjoyed a peaceful and calm environment in the home of her paternal aunt and paternal grandmother. Since making the move, she began sleeping through the night and her nightmares ended. The child is doing very well in placement. Her guardian testified that she has made a really good adjustment living with her aunt. In fact, A.M.G. is thriving in her aunt's home. (N[.T.], 12/20/13, [at] 9.) Termination of Mother's parental rights will clearly promote the welfare of this child. She will have proper parenting and fulfillment of her potential in a permanent, healthy, safe environment. All of her needs are met by her resource mother.

Trial Court Opinion, 2/25/2014, at 9-10. *See In re Adoption of A.C.H.*, 803 A.2d 224, 229-230 (Pa. Super. 2002) (order terminating parental rights reversed on appeal where even though trial court referenced needs and welfare in arriving at decision to terminate parental rights, it did so in conclusory fashion and without sufficient evidence in record to address emotional bonds child and parent share under section 2511(b)).

*effect on the child of permanently severing any such bond*. ***In the Interest of I.E.P.***, 87 A.3d 340, 344 (Pa. Super. 2014) (emphasis added).

In ***In re C.S.***, 761 A.2d 1197 (Pa. Super. 2000), our Court stressed the importance of a trial court's consideration of parent-child bond under section 2511(b):

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child-- the love, comfort, security, and closeness--entailed in a parent-child relationship, as well as the tangible dimension. ***In re Matsock***, 611 A.2d 737, 747 (Pa. Super. 1992). Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. ***In re William L.***, 383 A.2d 1228, 1241 (Pa. 1978). The trial court, in considering what situation would best serve the children's needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial. ***In re P.A.B.***, 570 A.2d 522, 525-26 (Pa. Super. 1990)[.]

***Id.*** at 1202.

Due to BCCYS's failure to cite in its brief evidence in the record regarding any bond between Mother and A.M.G., as well as the trial court's utter failure to discuss or analyze the existence of a parent-child bond under section 2511(b), we have had to comb through 385 pages of exhibits to discern whether a bond exists. The following portions in the record indicate that a bond *does* exist between Mother and A.M.G.:

- A July 6, 2012 supervised visit assessment indicates that A.M.G. "appeared excited and ran to [Mother]," Mother "gave [A.M.G.] a hug"

and told her that she was coming home soon. A.M.G. "was pleasant and happy during the visitation" and did not want to leave Mother at the end of the session.

- An October 12, 2012 "Family Group Decision Making Family Plan," prepared by BCCYS supervisor, Marsha Ganter, lists as a family strength a "clear bond between [Child] and [Mother]."

- A.M.G. indicated to a therapist that "she loves and misses her Mother." Letter from Awilda Carrera at Alternative Consultant Enterprises, Inc., 11/2/2012, at 1.

In its letter brief on appeal, BCCYS "acknowledges that Mother and Child had a bond, [but that] that bond was an unhealthy one." BCCYS's Letter Brief, at 5. Moreover, BCCYS states that "breaking the bond would not be detrimental to the Child but instead would promote the Child's best interests" and that "terminating Mother's parental rights would best serve the needs and welfare of the Child under § 2511(b) by providing her with the permanence necessary for the fulfillment of her potential in a loving, healthy and safe environment." *Id.*

Despite the above statements, it is BCCYS's burden, as the petitioning party, to prove to the Orphans' Court by clear and convincing evidence that terminating Mother's rights to A.M.G. under section 2511(b) is warranted. ***In the Interest of I.E.P.***, ***supra***. Merely alleging in its appellate letter brief that termination would serve A.M.G.'s needs and welfare is not sufficient -- it must be borne out in the record and the trial court must conclude that, based on the evidence, severing the bond between Mother and A.G.M. would not be detrimental to Child.

Although we are aware that a court is not required to order a formal bonding evaluation and that social workers and caseworkers can provide suitable evaluations regarding the parent-child bond just as well as experts in the field, *In the Interest of I.E.P.*, 87 A.2d 340 (Pa. Super. 2014), "where there is a lack of evidence as to the effect termination of parental rights will have on the child, there is not competent evidence to allow the trial court to make a proper determination under [s]ection 2511(b)." *In re Involuntary Termination of C.W.S.M.*, 839 A.2d 410, 415 (Pa. Super. 2003).[7] *See In re E. M.*, 620 A.2d 481, 485 (Pa. 1993) (stating that "[t]o render a decision that termination serves the needs and welfare of the child without consideration of emotional bonds . . . is not proper"); *see also in re T.F.*, 847 A.2d 738 (Pa. Super. 2004) (where trial court ordered involuntary termination of Mother's parental rights only under section 2511(a)(1), (2), (5) and (8), and court lacked any analysis or discussion under section 2511(b) of developmental, physical, and emotional needs and welfare of children and bonding between children and Mother, order granting termination was reversed).

In *In re T.S.M.*, 71 A.3d 251, 269 (Pa. 2013) our Supreme Court recently acknowledged that "attention must be paid to the pain that

---

[7] Although in rare cases we have found that where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists, *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008), here even BCCYS acknowledges in its letter brief on appeal that there is a bond between Mother and A.M.G.

- 11 -

inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact." Although the Supreme Court in *T.S.M.* ultimately reversed our Court's decision to affirm the order denying termination, stating that "[i]n relying upon the mere existence of the bond between Mother and the children, the trial court failed to recognize the substantial, possibly permanent, damage done to these children by the prolonged, unhealthy, pathological bond with Mother," *id.* at 270-71, whether severing Mother's bond with A.G.M. would similarly serve the developmental, emotional and physical needs and welfare of A.M.G. is not clear cut on this record. Without any trial court analysis regarding how terminating any parent-child bond would affect the emotional, physical and developmental needs and welfare of A.M.G., we are constrained to reverse and remand. *In re: C.W.S.M.*, *supra* (where consideration of bonds that may exist between Father and children and effect termination will have on children was "notably absent" from trial court's analysis, in combination with lack of evidence in record regarding effect termination will have on children, court reversed order terminating Father's parental rights and remanded case).

Motion to withdraw denied.[8]   Decree reversed; case remanded for proceedings consistent with this decision.  Jurisdiction relinquished.[9]

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2014

---

[8] Having determined that Mother's claims on appeal have arguable merit, we herein deny counsel's petition to withdraw.

[9] We remind the Orphans' Court judge of how important it is to include, in his Rule 1925(a) termination opinions, an analysis of the existence of a bond between a parent and child and any effect that breaking such bond would have on the child.  The failure to include such an analysis is surprising where section 2511(b) has been in effect since 1981 and has not been amended since 1995.  **See** Act 1980-163 (H.B. 213), P.L. 934, § 1, approved Oct. 15, 1980, eff. Jan. 1, 1981; Act 1995-76 (H.B. 215), P.L. 685, § 3, approved Dec. 20, 1995.